[Civ. No. 5817. Third Appellate District.—April 21, 1938.]

VIRGINIA SMITH, Appellant, v. MARTIN MALONEY, Respondent.

Bradford, Cross & Prior and Elvin F. Sheehy for Appellant.

Clifford A. Russell for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against her on the ground of contributory negligence, in a suit for damages for personal injuries received in an automobile casualty while she was riding as a guest in the defendant's car. The complaint charged the defendant with liability for damages under the provisions of section 403 of the Vehicle Code alleging that the accident was the result of his attempt to drive his machine while he was under the influence of intoxicating liquor.

The cause was tried by the judge sitting without a jury. The court found that the defendant was intoxicated at the time of the accident, and that the plaintiff accepted the invitation and rode in his machine as his guest, knowing that he was then intoxicated. Judgment was accordingly rendered against the plaintiff on the ground of contributory negligence. From that judgment this appeal was perfected.

This appeal presents only two questions: First, does the evidence support the finding that the defendant was intoxicated at the time of the accident? Second, does the evidence support the finding that the plaintiff knew, or as a reasonable person should have known, at the time she accepted the invitation to ride in the defendant's automobile as his guest, that he was intoxicated?

While there is a conflict regarding these issues, we are of the opinion both questions must be answered in the affirmative.

The accident occurred at the intersection of L and Sixteenth Streets in Sacramento, October 27, 1934, between 11 and 12 o'clock at night. Both the plaintiff and the defendant were then unmarried. They had been almost daily companions for two months. The plaintiff asked the defendant to accompany her to a buffet supper on Twenty-second Street in that city. The defendant had been playing tennis that afternoon. After completing the tennis game he visited the Pot & Spigot bar at about 6:30 P. M., in company with

Mr. Newell, and drank two Scotch highballs. He then called for the plaintiff and they drove in his automobile to the buffet party on Twenty-second Street between T and U Streets, where they arrived about 7 o'clock in the evening. During the progress of the party, in which some thirty or forty guests participated, the defendant drank four more Scotch or Bourbon highballs. About 10 o'clock the plaintiff and defendant, in company with two friends, drove in the defendant's car to the Tavern, where he drank two more glasses of liquor. They then returned to the party, and after bidding adieu to their hosts, they returned at about 11 o'clock to defendant's machine for the purpose of visiting the Senator Cocktail Lounge. They drove up Twenty-first Street to its intersection with L Street, thence westerly along L Street to its intersection with Sixteenth Street, where the collision with another machine occurred. The plaintiff testified that she had not particularly observed the defendant for that purpose before they started to drive to the Senator Hotel, but she had not noticed that he appeared to be intoxicated, yet before they reached P Street, which was only five blocks from their starting point, she became convinced he was drunk. The defendant attempted to place his arm around the plaintiff. She protested and told him to "watch his driving". He laughed and increased the speed of his machine. When they reached L Street, he made a right angle turn on to that street at the rate of 45 miles an hour. She said in that regard:

"He would sort of zigzag from one to both sides; he would be on his right side, and sometimes he would be on the wrong side. . . . I think he wasn't paying any attention to his driving, and I thought he must have had too much to drink,—he must have, to drive that way."

The intersection light at Sixteenth Street was blinking, but he paid no attention to the signal. He drove into that intersection at the rate of 50 or 60 miles an hour, colliding with another machine which was going south along Sixteenth Street. .The plaintiff and defendant were both thrown from his car. The plaintiff lay unconscious on her back in the street and the defendant was thrown across her body. Three witnesses testified that he arose and staggered away. Both of them were taken to the emergency hospital. One witness said he staggered around there, quarreling with others and acting peculiarly. The witness said that when he approached

the defendant he thought he smelled the fumes of liquor on his breath. While there is a conflict of evidence regarding the defendant's intoxication, and several witnesses testified that he did not appear to be drunk when they left the buffet supper on their journey to the Senator Hotel, there is sufficient evidence to support the finding of the court to the effect that he was then intoxicated.

The more important question remains as to whether the plaintiff knew, or viewed in the light of a reasonable person, should have known, at the time she entered his machine to go to the Senator Hotel, that he was then intoxicated. The plaintiff was very seriously, and probably permanently, injured. It is an unfortunate situation, but we are of the opinion the evidence sufficiently supports the finding that she knew, or should have known, that he was then drunk. In determining that question we should not only consider the evidence as a whole, but we must also add all the reasonable inferences that may be drawn therefrom. (*House* v. *Schmelzer*, 3 Cal. App. (2d) 601 [40 Pac. (2d) 577].)

The plaintiff had been keeping company with the defendant almost daily for two months past. She had frequently seen him drinking. About a week before the accident occurred he became intoxicated in her presence. It is reasonable to assume she must have known he had been drinking before they attended the buffet supper that night. She knew that he drank liquor at that party. During the progress of the party they, in company with two other companions, deliberately drove to the Tavern to procure other drinks. She saw him drink two highballs at that bar. In spite of the fact that he took her to the buffet supper at her own request, she sought to avoid returning with him and asked Mr. Nelson to take her home. She testified that this request was made of Nelson because the defendant had quarreled with her and she had decided not to keep company with him any more. Except for her testimony, there is no evidence of unfriendliness between them. She had not even told him of that intention. He did not know of it. He denied there was any unpleasantness between them. It is improbable that she would attempt to break their previous friendly relations in the midst of a party to which she had personally invited him. That is especially true since they had no quarrel at the party. It is a reasonable assumption that she asked

Nelson to take her home because she realized the defendant was intoxicated to an extent that would render it dangerous for her to ride with him. When she was asked if she did not request Mr. Nelson to take her home, "because Martin Maloney was intoxicated", she replied, "I do not remember that at all. . . . I wasn't noticing very much." She, however, admitted that one of the reasons she intended to cease keeping company with him was because the defendant drank to excess. This colloquy occurred upon that subject:

"Q. Was that the reason you did not want to go out with him any more, . . . [that] he imbibed too much when you and he went out? . . . A. *That was one of the reasons,* and the other reason was we just could not agree. . . . Q. That was one of the reasons, he drank too much? A. Yes. . . . Q. One of the principal reasons? A. Yes."

The evidence in the present case that the plaintiff knew, or in the exercise of reasonable prudence should have known, when she entered the defendant's car to drive to the Senator Hotel, that he was intoxicated to a degree that rendered him incapable of safely operating the machine is not strong, but it does sufficiently support the finding of the court in that regard. She had kept company with him almost daily for two months; she knew his tendency to drink intoxicating liquor; he was intoxicated in her presence a week prior to the accident; she drank considerable liquor with him that very night, and she asked another friend to take her home, partly because she knew of his habit of drinking to excess. In the case of *House* v. *Schmelzer,* 3 Cal. App. (2d) 601, 605 [40 Pac. (2d) 577], it is said:

"While an innocent person is entitled to protection from intoxicated drivers and to redress for injuries caused by them, one who accepts a ride under circumstances which should be sufficient warning to any reasonable person that the driver is not in a fit condition to operate his car has no just cause for complaint when the law leaves him where he finds himself. In *Jones* v. *Pacific Gas & Electric Co.,* 104 Cal. App. 47 [285 Pac. 709], the court said: 'Where one voluntarily participates in midnight festivities leading to the drunken condition of an automobile driver, the law does not permit such an one to shut his eyes to the hazards of riding with the intoxicated driver and in the event of injury following his

careless and negligent driving, hold a third party responsible in damages.' ''

To the same effect are the following authorities: 4 Blashfield's Ency. of Automobile Law, p. 246, sec. 2453; 5–6 Huddy's Ency. of Automobile Law, p. 261, sec. 143; *Lynn* v. *Goodwin*, 170 Cal. 112 [148 Pac. 927, L. R. A. 1915E, 588].

In the case last cited it is said:

''While it is true that in general the negligence of the driver of a vehicle is not imputable to a passenger so as to bar that passenger's right of recovery . . . yet the conduct of the plaintiff in riding and in continuing to ride in an automobile when he must have known that the driver was intoxicated, established independent negligence upon the plaintiff's part, independent of the driver's negligence, barring the right of recovery.''

Many cases are cited in support of the preceding declaration of law.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.