[Civ. No. 12469.   Second Dist., Div. One.—June 17, 1941.]

H. J. MACART et al., Respondents, v. SAN JOAQUIN BUILDING AND LOAN ASSOCIATION (a Building and Loan Association) et al., Appellants.

O. C. Parkinson for Appellants.

Samuel Schwartz and P. Talbot Hannigan for Respondents.

WHITE, J.—After trial without a jury of an action for damages based upon alleged fraudulent misrepresentations whereby plaintiffs were induced to purchase certain real estate, the court made findings of fact, substantially according to the allegations of plaintiffs' complaint (as amended to conform to the proof), and rejecting the denials of defendants' answer. Such findings were that on or about October 18, 1937, defendants offered to sell to plaintiffs a certain parcel of property located in Orange County; that prior to such purchase defendants represented to plaintiffs that the buildings located upon said property were in good and substantial structural condition and had not been impaired by termites, dry rot or otherwise. The court further found that plaintiffs had not made any inspection of said buildings prior to the purchase other than inspection of a casual nature, and that such plaintiffs did not rely upon any inspection of said buildings, but relied upon the representation of defendants, and in reliance thereon purchased the property in question. The court further found that the sills, studdings and timbers of portions of the buildings were infested and destroyed by dry rot and fungus; that the falsity of the representations was known to the defendants, and that the representations were made with intent to induce plaintiffs to purchase the property.

Judgment accordingly was entered in favor of plaintiffs in the sum of $990, and from such judgment defendants prosecute this appeal, contending that there is no evidence of misrepresentation; no proof of knowledge by defendants of the alleged condition; that plaintiffs did not rely upon

the asserted representations; and that no actual damage was shown.

The plaintiffs were husband and wife and the defendant W. J. Haryett was the resident manager in Los Angeles of the defendant association. The property involved was a two-story stucco building, about seven years old, containing two stores, each with an apartment above it, a three-room cottage in the rear, and a four-car detached garage, and was located at Dana Point, a beach subdivision along the coast highway in Orange County. The plaintiff H. J. Macart lived in Los Angeles and was employed as a real estate sales manager for Dana Point Corporation, spending his Sundays at the office of the corporation about a block and a half from the property. The misrepresentations assertedly were made in two conversations with Mr. Haryett, the first of which was had about October 18, 1937, when Macart and Haryett inspected the property. Mr. Macart testified that at this time they looked at the property for "about five or six minutes"; that they looked at the west store, east apartment and rear bungalow, but did not "make any examination of the construction of the building or condition of the structure"; that at that time Mr. Haryett "said the property was in nice condition"; that they could not get into one store because they could not unlock the door; that he could not see much through the windows of that store because they were dirty; that he did not attempt to get into that store or further inspect the building before the actual purchase.

After this conversation, on November 1, plaintiff Macart went to the Los Angeles office of defendant association and made a deposit of $20. At this time Mr. Macart and defendant Haryett as manager of the association executed a document which, in substance, acknowledged receipt by defendant association of the deposit as "part purchase price", and recited that the full purchase price was to be $2,500, payable $250 down and the balance $25 or more per month including principal and interest at six per cent. It also contained the following provision: "The deal is subject to the approval of the Board of Directors of San Joaquin Building & Loan Association. . . . " At the foot of this receipt there was indorsed: "I hereby agree to purchase the within described property upon the price and terms herein mentioned

with the understanding that the deposit is to be returned in the event the deal is not approved. H. J. Macart.''

The second alleged misrepresentation, according to the testimony of both plaintiffs, was made in the office of defendant association in Los Angeles on November 5, 1937. On this occasion the parties executed an ''escrow agreement'', which recited that the seller agreed to sell and the buyer to purchase the property in question for $2,500, of which $250 was to be paid in cash and the balance by the execution of a trust deed for $2,250, payable $25 per month, including interest at six per cent. It will be noted that these were precisely the terms contained in Mr. Macart's offer of November 1st. Mr. Macart testified that while the papers were being prepared by the girl in Mr. Haryett's office, ''I asked about the condition of the store; asked if it had been checked for termites or fungus or in what condition it was in. He'' (Haryett) ''said it was in very good condition because he had gone all over the place and checked it thoroughly and it was in very fine condition. Because I could not get into that one store, I didn't know what it looked like.'' Mr. Macart further testified that he would not have purchased the property had the statements not been made.

Appellants earnestly contend that the record herein is barren of any substantial evidence to support the findings, and that the judgment predicated thereon must be reversed. The powers of an appellate court in reviewing the evidence when an appeal is taken on the ground of insufficiency of the evidence to support the judgment have received frequent attention from the courts, and the limitations upon appellate tribunals in such cases have been definitely announced and established. The rule in question may be epitomized in a quotation of the following language taken from the case of *Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183]:

''In reviewing the evidence on such appeal all the conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which

will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.''

We think that enough of the evidence has been summarized herein to indicate that, although the question may be a close one, there is substantial evidence to sustain the findings of the trial court that the false representations were made to plaintiffs as charged. We cannot concern ourselves with the credibility of witnesses or the intrinsic value of testimony. Those are matters addressed to the trier of facts. No rule is more firmly grounded in our law than the one which provides that an appellate tribunal cannot disturb the findings of the trial court except when it is made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence, circumstantial or otherwise, to support the conclusion reached in the lower court. Our appellate jurisdiction is confined solely to questions of law, and where the evidence which militates against an appellant, considered by itself and without regard to conflicts in the entire evidence, is sufficient to support the findings, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact, upon which the determination of the trial court is final and conclusive.

In the light of the rule just announced, let us proceed to an analysis of the record before us. In it we find positive and direct testimony that, in response to an inquiry by plaintiffs as to whether the premises in question ''had been checked for termites or fungus, or in what condition it was'', defendant Haryett replied that ''it was in very good condition, because he had gone all over the place and checked it thoroughly and it was in very fine condition''. True, this statement was made on the occasion of the second meeting of the parties and following the execution of the original offer and receipt, but it was nevertheless made at a time prior to the final consummation of the deal between the parties, the original agreement being of an executory character. Further, such evidence was corroborative of the statement made by the same defendant to one of the plaintiffs at the time of their initial meeting, which statement was that the property was ''in nice condition''. In addition to the foregoing, the record indicates that at the trial, when defendant Haryett

was asked in connection with his inspection of properties which his codefendant was offering for sale, "If you see any places which seem to have been infected what do you do?" he answered, "If we see any boards that look bad we paint them so they look good." In such circumstances, we are without power to disturb the questioned findings.

Appellants' claim that the defective condition of the buildings was latent and not within the knowledge of appellants is answered by the positive testimony given by appellant Haryett, when in reply to a query by one of the respondents as to whether an investigation had been made to determine the presence of a termite condition, he replied that the property had been thoroughly checked and "was in very fine condition".

Appellants' next contention, that respondents did not rely upon the alleged representations of the former, is completely refuted by the following testimony given by respondent Macart:

"Q. This statement regarding the condition of the building was before you and your wife signed the escrow papers? A. That is right. Q. Did you rely upon that statement? A. I did. Q. If that statement had not been made, would you have purchased the property? A. I don't believe I would; I would not have had money to take care of it. Q. Well, do you know whether you would or not? A. I know I would not."

Mrs. Macart likewise testified: "Q. If you had not been sure that the building was in good condition would you have gone ahead with this deal? A. No, I know we would not."

While the evidence was in conflict as to the actual value of the property which respondents received, there is present in the record evidence of sufficient substantiality to justify the court, in conformity with section 3343 of the Civil Code, in awarding plaintiffs the sum of $990 as damages sustained by reason of the false representations made to induce them to enter into the contract in question.

No other issues raised require consideration or discussion. The judgment is affirmed.

York, P. J., and Doran, J., concurred.